# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LINDA PASTERNAK, NANCY DYKSHORN, and ALICE MCMILLEN, | ) ) ) | |
| Plaintiffs, | ) ) | 13 C 3383 |
| v. | ) ) | Judge Jorge L. Alonso |
| VILLAGE OF DOLTON, a municipal corporation, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs sue defendant for its alleged violations of Title VII, the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 1981, and the Fourteenth Amendment and for retaliatory discharge. The case is before the Court on the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 and defendant's motion to strike plaintiffs' Local Rule ("LR") 56.1(a) Statement. For the reasons set forth below, the Court strikes as moot the motion to strike, denies in part and strikes as moot in part plaintiffs' motion, and grants in part and strikes as moot in part defendant's motion.

## Motion to Strike

Defendant moves to strike four of the six statements asserted by plaintiffs in their LR 56.1(a) Statement because they are hearsay, argumentative, or assert legal conclusions. (*See* Def.'s Mot. Strike ¶¶ 1, 3-4, 6.) Because the Court disregards inadmissible or improper statements as a matter of course, it strikes as moot defendant's motion to strike.

**Motions for Summary Judgment**

LR 56.1 requires a party opposing summary judgment to file "a concise response to the movant's statement [of material undisputed facts] that shall contain," among other things, "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). The purpose of the Rule is "to isolate legitimately disputed facts and assist the court in its summary judgment determination." *Brown v. GES Exposition Servs., Inc.*, No. 03 C 3921, 2006 WL 861174, at *1 (N.D. Ill. Mar. 31, 2006). This Court can and does require strict compliance with LR 56.1. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("We have . . . repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1.") (citing *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994)).

Plaintiffs did not follow the Rule. Instead, they "[d]isputed in part" most of the fact statements made by defendant, without identifying the part(s) of the statements with which they disagreed, and supported the partial denials with general citations to lengthy documents or their own memorandum of law, neither of which is appropriate. (*See* Pls.' LR 56.1(b)(3)(B) Stmt. ¶¶ 4-6, 8, 13, 16-17, 19-22, 25, 28-30, 32-41, 43-56, 60-61, 63-68); *see also* LR 56.1(b)(3)(B) (stating that any fact dispute must be supported by evidence); *Ammons*, 368 F.3d at 817-18 (7th Cir. 2004) ("Citations to . . . a lengthy exhibit are not specific and are . . . inappropriate. A court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity."). The Court could only make sense of plaintiffs' "disputed in part" responses by combing through the record for factual disputes, which it is not required to do. *See Greer v. Bd. of*

*Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001) ("[A] lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are "'obliged in our adversary system to scour the record looking for factual disputes.'" (quoting *Waldridge*, 24 F.3d at 921-22); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) (stating that "[j]udges are not like pigs, hunting for truffles buried" in the record). Accordingly, the Court deems plaintiffs to have admitted the "disputed in part" statements in their LR 56.1(b)(3)(B) Statement, *i.e.*, ¶¶ 4-6, 8, 13, 16-17, 19-22, 25, 28-30, 32-41, 43-56, 60-61, 63-68.

## Facts

The Dorchester Center is a senior housing and banquet facility owned by the Village of Dolton ("Village"). (Pls.' LR 56.1(b)(3)(B) Stmt. ¶¶ 1-2.) Sometime before 1998, the Village contracted with a private property management company to manage the Dorchester. (*Id.* ¶ 3.) The Village expected the company to pay the Dorchester's operating expenses out of the revenues it generated and that any profits would be assigned to the Village. (*Id.* ¶¶ 5-6.) If the Dorchester did not make enough to cover operating expenses, the Village would loan the management company money to cover essentials like payroll. (*Id.* ¶ 7.)

From 1998 through September 21, 2001, the management company was Schweer Senior Care Management Company, which was owned by Fred Hansen. (*Id.* ¶ 8; *see* Def.'s LR 56.1(a) Stmt., Ex. C, Dorchester Management Agreement (July 6, 1998).) The agreement between the Village and Schweer states that "[t]he employees of [Schweer] shall not be considered employees of the Village." (Def.'s LR 56.1(a) Stmt., Ex. C, Dorchester Management Agreement ¶ 3 (July 6, 1998).)

At some point during Schweer's tenure as the management company, Hansen hired plaintiff Dykshorn to work in the Dorchester's front office and plaintiff McMillen to be head of housekeeping. (Pls.' LR 56.1(b)(3)(B) Stmt. ¶¶ 11, 17.)

Sometime thereafter, plaintiff Pasternak took over Hansen's role at Schweer, and on September 14, 2001, she filed articles of incorporation with the Illinois Secretary of State for Schwartz Senior Care Management, Inc. (*See id.* ¶ 21; Def.'s LR 56.1(a) Stmt., Ex. E, Articles of Incorporation.)

On September 21, 2001, the Village entered into an agreement with Schwartz Senior Care Management, Inc. to have it manage the Dorchester. (*See* Def.'s LR 56.1(a) Stmt., Ex. D, Dorchester Management Agreement (Sept. 21, 2001).) The agreement is signed by Pasternak as president of Schwartz and states that "[t]he employees of [Schwartz] shall not be considered employees of the Village." (*Id.* ¶ 3 & Signature Page.) The next day, Pasternak hired McMillen and Dykshorn to work for Schwartz. (Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 35.)

On April 28, 2008, Pasternak sustained a work-related injury that precluded her from performing any work as the manager of the Dorchester or owner of Schwartz. (*Id.* ¶ 51.)

On May 2, 2008, the Village notified Pasternak that the management contract between the Village and Schwartz was terminated effective April 30, 2008. (*Id.* ¶ 55.) Apparently, plaintiffs' employment at the Dorchester ended on that date.

## Discussion

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters

4

asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

**Federal Claims**

Plaintiffs allege that the Village discriminated against them on the basis of their race and sex in violation of Title VII, the Fourteenth Amendment, and 42 U.S.C. § 1981 (Counts I, III, V, VII and IX, and XI), and on the basis of their age in violation of the ADEA (Counts II, VI, and X). To defeat defendant's motion and prevail on their own, plaintiffs must show that the Village was their employer and that it discriminated against them because of their race, sex, and age. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting race and gender discrimination by employers); 29 U.S.C. § 623(a)(1) (prohibiting age discrimination by employers); 42 U.S.C. § 1981 (prohibiting race discrimination in contracts); *Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 300 (7th Cir. 1985) ("The Fourteenth Amendment's Equal Protection Clause prohibits intentional discrimination based on membership in a particular class . . . including acts of employment discrimination."). Plaintiffs contend, and defendant denies, that the Village was plaintiffs' employer.

However, even if it was, an issue the Court does not decide, plaintiffs could prevail only if they showed that they were the victims of discrimination. They can do so by using either the direct method of proof or the indirect method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 719 (7th Cir. 2005); *see Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750 (7th Cir. 2006) (stating that the same analysis applies

to Title VII and Fourteenth Amendment discrimination claims); *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996) ("We analyze § 1981 discrimination claims in the same manner as claims brought pursuant to Title VII . . . ."). The direct method requires proof of discriminatory animus, *e.g.*, evidence of biased comments, that defendant gave "systematically better treatment" to similarly-situated employees outside of the protected class or that defendant treated such employees more favorably for incredible reasons. *Rudin*, 420 F.3d 712, 720-21 (quotation omitted). The indirect method first requires each plaintiff to make a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) a similarly-situated employee outside of the protected class was treated more favorably. *Burks*, 464 F.3d at 750-51.

The record contains no evidence that suggests plaintiffs were the victims of discrimination under either method. It is reasonable to infer from plaintiffs' LR 56.1 Statements that they are female and were terminated from their jobs at the Dorchester. However, those Statements do not assert, or contain facts from which the Court can infer, the race of each plaintiff or that each plaintiff is at least forty years old. *See generally*, Pls.' LR 56.1(a) Stmt.; Pls.' LR 56.1(b) Stmt.; *see also* 29 U.S.C. § 631(a) (stating that "[t]he prohibitions [in the ADEA] shall be limited to individuals who are at least 40 years of age"). Also missing are any facts that suggest a man, of any age or race, received more favorable treatment than plaintiffs. Absent such evidence, plaintiffs have not created a genuine issue of material fact as to whether they were victims of discrimination, and the Village is entitled to judgment as a matter of law on their discrimination claims.

6

**State Claims**

In Counts IV, VIII, and XII, plaintiffs assert state-law claims for retaliatory discharge. Having dismissed all of the federal claims in this case, the Court declines to exercise supplemental jurisdiction over the state law claims in these counts, which are dismissed without prejudice to refiling in state court. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over state claims if it "has dismissed all claims over which it has original jurisdiction").

**Conclusion**

For the reason set forth above, the Court: (1) strikes as moot defendant's motion to strike [101]; (2) denies plaintiffs' motion for summary judgment [95] as to the federal claims (Counts I-III, V-VII and IX-XI) and strikes it as moot as to the state claims (Counts IV, VIII, and XII); (3) grants defendant's motion for summary judgment [91] as to the federal claims (Counts I-III, V-VII and IX-XI) and strikes it as moot as to the state claims (Counts IV, VIII, and XII); and (4) declines to exercise supplemental jurisdiction over the state claims, which are dismissed without prejudice to refiling in state court.

**SO ORDERED.**     **ENTERED: August 4, 2015**

_____
**HON. JORGE ALONSO**
**United States District Judge**

7